# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **SHANNON BERLANT**, | Case No. 3:23-cv-00868-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LIMITED DISCOVERY** |
| v. | |
| **U.S. DEPARTMENT OF COMMERCE**; and **NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY**, | |
| Defendants. | |

Shannon Berlant, Portland, OR 97224. Pro se Plaintiff.

Natalie K. Wight, United States Attorney, and Michael Jeter, Assistant United States Attorney, 1000 SW 3rd Ave., Ste. 600, Portland, OR 97204. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Pro se Plaintiff Shannon Berlant brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against Defendants U.S. Department of Commerce ("DOC") and the National Institute of Standards and Technology ("NIST") (together, "Defendants"). Currently before this Court are two motions: Plaintiff's Motion to Allow Limited Discovery ("Disc. Mot."), ECF 39, and Defendants' Motion for Summary Judgment ("MSJ"), ECF 28. As

PAGE 1 – OPINION AND ORDER ON SUMMARY JUDGMENT

discussed below, Plaintiff is not entitled to the discovery that she requests, and her motion is

denied. Because there is no genuine dispute of material fact that Defendants properly complied

with their FOIA obligations in conducting their searches and withholding certain sensitive

documents, summary judgment to Defendants is warranted.

## BACKGROUND

Defendant NIST is part of Defendant DOC. *See* NIST Acknowledgement Letter, ECF 29-

2. NIST administers the National Voluntary Laboratory Accreditation Program ("NVLAP").

Declaration of Dana S. Leaman ("Leaman Decl."), ECF 29 ¶ 1. This program provides

accreditation services to public and private laboratories. *Id.* Accreditation is based on the

laboratories' technical qualifications and ability to carry out specific calibrations or tests. *Id.*

On July 30, 2022, Plaintiff submitted a FOIA request to NIST seeking documents related

to the accreditation of four laboratories that are or have been part of NIST's voting system

testing. *Id.* ¶ 5 & FOIA Request, ECF 29-1. Plaintiff identified these laboratories as "SLI," "Pro

V&V," "Wyle," and "NTS." FOIA Request, ECF 29-1. NVLAP interpreted SLI as SLI

Compliance, Pro V&V as Pro V&V, Inc., Wyle as Wyle Laboratories, Inc., and NTS as National

Technical Systems Inc. Leaman Decl., ECF 29 ¶ 7. Wyle Laboratories was acquired by National

Technical Systems in 2014. *Id.*

Plaintiff's FOIA request sought the following documents for the years 2006 to 2022:

> 1) For the lab SLI, that applied to be part of NIST's NVLAP
> program, please provide a copy of their completed initial
> application form.
>
> 2) For the lab pro V&V, Wyle and NTS – please provide a copy of
> their completed initial application form.
>
> 3) For the labs Pro V&V, SLI, Wyle and NTS – please provide a
> copy of all letters issued by NIST (Dept of Commerce) advising
> them that they were approved and/or receiving NVLAP
> Accreditation along with a copy of the certificate.

> 4) For the labs Pro V&V, SLI, Wyle and NTS – please provide a copy of the letter sent by NIST (Dept of Commerce) reminding the lab that they must renew their accreditation.
>
> 5) For the labs Pro V&V, SLI, Wyle and NTS – please provide a copy of the lab's completed renewal application form, for each renewal.

FOIA Request, ECF 29-1. NIST understood Plaintiff's request as seeking application forms, not entire applications. Leaman Decl., ECF 29 ¶ 8. Plaintiff subsequently clarified that she intended exhibits to applications to be included in her request, but not "until production was substantially complete" and this litigation had commenced. *Id.* ¶ 9.

DOC staff then began searching for documents. *Id.* ¶ 20. DOC searched two locations that it identified as "the only locations reasonably likely to contain responsive documents." *Id.* ¶ 23. First, it searched a database called NVLAP Interactive Web System ("NIWS"), "[a] secure on-line portal" that allows DOC personnel and laboratories to access records relating to the laboratories. *Id.* ¶ 14. Within NIWS, "all data in the database associated with specific laboratory accreditation cycles [are] destroyed 10 years after the closure of the accreditation period." *Id.* ¶ 16. Pursuant to that policy, records were not expected to still exist for accreditation cycles starting prior to October 1, 2006. *Id.* ¶ 22. DOC accordingly searched NIWS for all post-2014 records related to the relevant laboratories, as it believed all responsive records for accreditation cycles commencing between 2016 and 2022 would be in that database. *Id.* ¶¶ 20–21.

Second, in addition to searching NIWS, DOC searched the records stored in the National Archives and Record Administration's Federal Records Center for hard copies of all responsive records created before June 11, 2015. *Id.* ¶ 22. DOC requested and obtained hard copies of records concerning the laboratories. *Id.*

In total, Defendants produced 137 responsive documents, of which sixty-six had redactions. *Id.* ¶¶ 24–32. Fifty-eight were redacted under FOIA Exemption 6; seven under

Exemption 4. *Id.* ¶¶ 32–44. Defendants produced all non-exempt information that could be reasonably segregated from the exempt information. *Id.* ¶¶ 45–47. No documents were withheld in full. *Id.* ¶ 32.

Plaintiff filed this action on June 14, 2023. Complaint, ECF 1. She alleges that Defendants violated FOIA by (1) failing to conduct an adequate search for responsive records and (2) wrongfully withholding non-exempt responsive records. *Id.* ¶¶ 23–33. On July 3, 2024, Defendants filed the instant Motion for Summary Judgment. ECF 28. On September 20, 2024, Plaintiff filed a Motion to Allow Limited Discovery. ECF 39.

## LEGAL STANDARDS

FOIA requires federal agencies to disclose certain records that are requested by a member of the public. 5 U.S.C. § 552. The statute provides that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . and procedures to be followed, shall make the records promptly available to any person." *Id.* § 552(a)(3)(A).[1]

FOIA cases are typically decided at the summary judgment stage. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). Summary judgment may be granted in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Cameranesi v. U.S. Dep't of Def.*, 856 F.3d 626, 636–37 (9th Cir. 2017). Material facts are those which might affect the outcome of the suit, and a dispute about a material fact is genuine if there is sufficient

---

[1] FOIA defines "agency" as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency," subject to certain exceptions. 5 U.S.C. § 551(1). There is no dispute that the DOC is an agency subject to FOIA.

evidence for a reasonable trier of fact to decide in favor of the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Because Plaintiff is proceeding pro se, this Court construes her filings liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

## DISCUSSION

This Court begins by assessing whether Plaintiff is entitled to the discovery that she requests, and, finding that she is not, this Court turns to Defendants' summary judgment motion.

### A. Plaintiff's Motion for Limited Discovery

Plaintiff requests that this Court defer its summary judgment ruling until Plaintiff has received discovery. Disc. Mot., ECF 39 at 2. Because Plaintiff fails to show that discovery is warranted and has not produced any evidence of Defendants' bad faith, Plaintiff's discovery motion is denied.

Federal Rule of Civil Procedure 56(d) permits a party opposing a motion for summary judgment to request an order deferring time to respond to the motion and permitting discovery upon an adequate factual showing. Such a party "must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006). In FOIA cases, discovery is generally unavailable because the underlying cases concern the propriety of revealing certain documents. *Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). Discovery is appropriate if the plaintiff makes a showing of bad faith on the part of the agency. *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994).

Plaintiff gives four grounds for seeking discovery: (1) to resolve alleged "metadata discrepancies" in produced documents, Disc. Mot., ECF 39 at 3; (2) "to assess the completeness of Defendants' search and [records] production" since "Plaintiff has identified numerous

anomalies . . . suggesting that not all responsive documents have been produced," *id.* at 4; (3) to obtain "unredacted versions of [certain] records or more detailed explanations for the redactions" to ensure FOIA compliance. *id.*; and (4) to obtain "all relevant attachments" to requested applications. *Id.* at 5.

First, to Plaintiff's request that Defendants produce emails or records to support her assertion of "metadata discrepancies" in produced documents, any such documents are beyond the scope of Plaintiff's FOIA request and are not relevant to the issues at summary judgment.

Second, to the extent that Plaintiff seeks to utilize discovery to obtain "the very information that is the subject of the FOIA complaint," this discovery is not warranted. *Lane*, 523 F.3d at 1134; *see Lawyers' Comm. for C.R. of S.F. Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1137 (N.D. Cal. 2008). And if she seeks discovery of requested documents that were not initially produced in order to show that Defendants' search was inadequate because these documents were not turned over, this discovery is inappropriate. *See Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 771 (9th Cir. 2015) ("[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate.").

To Plaintiff's request for "unredacted versions of [certain] records or more detailed explanations for the redactions" to ensure FOIA compliance, *id.* at 4, Plaintiff has not shown that the explanations given were insufficient. This Court declines to order the government to turn over unredacted versions of proprietary documents.

Last, Plaintiff's request for full application packages is beyond the scope of her FOIA request. Plaintiff's request sought only "completed" initial or renewal "application forms," not full application packages with attachments. *See* FOIA Request, ECF 29-1.

In sum, the discovery Plaintiff requests, even liberally construed, is not relevant or necessary for her response to Defendants' summary judgment motion and would unduly burden Defendants. This conclusion is reinforced by this Court's finding on summary judgment below that the search was adequate. *Buckovetz v. Dep't of the Navy*, No. 21-CV-640, 2022 WL 4591795, at *3 (S.D. Cal. Sept. 29, 2022) ("When the agency's affidavits are adequate, a district court may forgo discovery and grant summary judgment on the basis of the agency affidavits alone."). And despite her assertions of bad faith, Resp., ECF 28 at 1–2, Plaintiff has not provided evidence of bad faith. Indeed, the evidence shows that Defendants have engaged with Plaintiff in good faith, such as by offering Plaintiff an explanation of the metadata issues and providing the email domain names to Plaintiff. Supplemental Declaration of Dana S. Leaman, ECF 36 ¶¶ 6–7. Plaintiff's discovery request is therefore denied.

**B.  Defendants' Motion for Summary Judgment**

Defendants move for summary judgment, arguing they have discharged their FOIA obligations in response to Plaintiff's request. MSJ, ECF 28 at 1. In response, Plaintiff argues that Defendants' FOIA searches were inadequate and that Defendants improperly applied exemptions. Plaintiff's Response in Opposition to Defendants' MSJ ("Pl.'s Resp."), ECF 32 at 6–8, 11. Contrary to Plaintiff's contentions, this Court finds that Defendants' FOIA searches were adequate, and Defendants properly applied Exemptions 6 and 4 to redact information from responsive documents.

**1.  Defendants' FOIA Searches Were Adequate**

FOIA requires an agency to conduct an "adequate" search in response to a records request. *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 779 (9th Cir. 2022). The burden is on the agency to prove "beyond material doubt" that its search was "reasonably calculated to uncover all relevant documents." *Id.* Adequacy can be established through

"reasonably detailed, nonconclusory affidavits submitted in good faith." *Id.* at 780 (internal quotation marks omitted). Such affidavits are presumed to be in good faith. *Id.* Meticulous documentation is not required. *Id.* Failure to produce or identify a few isolated documents cannot by itself prove inadequacy. *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 771 (9th Cir. 2015). This is because adequacy is assessed "not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Transgender L. Ctr.*, 46 F.4th at 780.

Complying with these requirements, Defendants have submitted, under penalty of perjury, a detailed declaration from a qualified individual, Dana S. Leaman, the Chief of the National Voluntary Laboratory Accreditation Program. Leaman Decl., ECF 29 ¶ 1. In her Declaration, Ms. Leaman explains at length how the relevant facilities retain documentation, *id.* ¶¶ 12–19, and how her staff searched both digital archives and physical records for responsive documents, *id.* ¶¶ 20–23. Ms. Leaman also explains that, "[d]ue to the record disposition schedule, records were not expected to still exist for accreditation cycles starting prior to October 1, 2006" and that "[o]ther than the central database and the hard copy records accessioned at a . . . federal records center, there are no other locations reasonably likely to contain additional documents responsive to Berlant's FOIA request." *Id.* ¶¶ 22–23. There is no reason to doubt the good faith of this declaration. Defendants' search was reasonably calculated to uncover all records responsive to Plaintiff's FOIA requests.

Plaintiff's contrary argument is meritless. Plaintiff contends that, because she has not received all the records she requested, and Defendants have not stated that they do not possess responsive records, it is "likely" or "possible that [their] search was inadequate." Pl.'s Resp., ECF 32 at 7–8. But this Court may not judge adequacy based on the results of the search. *Transgender L. Ctr.*, 46 F.4th at 780. Plaintiff also states that the search was inadequate because

"attendant emails" were not produced. Pl.'s Resp., ECF 32 at 11. Plaintiff was not entitled to emails based on the language of her request. She requested letters and application forms, not full application packets. Defendants complied with their search obligations under FOIA.

### 2.    Defendants Properly Withheld Information Under Statutory Exemptions

Disclosure obligations under FOIA "extend to all agency records except the nine categories of records listed in § 552(b) as exempt from disclosure." *Cameranesi v. United States Dep't of Def.*, 856 F.3d 626, 637 (9th Cir. 2017). Agencies are required to prepare a *Vaughn* Index detailing their withholdings and related justifications. *Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 881 (9th Cir. 2024). This Index must "(1) identify each document withheld; (2) state the applicable statutory exemption; and (3) explain how disclosure would harm the interests protected by the statutory exemption." *Id.* "An agency must describe the document or information being withheld in sufficient detail to allow the plaintiffs and the court to determine whether the facts alleged establish the corresponding exemption." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 780 (9th Cir. 2015).

Defendants withheld documents under Exemptions 4 and 6. Each is discussed in turn, considering the *Vaughn* Index and Leaman Declaration.

### a.    Exemption 4

Exemption 4 protects from disclosure "commercial or financial information obtained from a person [that is] privileged or confidential." 5 U.S.C. § 552(b)(4). "In order to invoke Exemption 4 in the Ninth Circuit, the government agency must demonstrate that the information it sought to protect is (1) commercial and financial information, (2) obtained from a person or by the government, (3) that is privileged or confidential." *Watkins v. U.S. Bureau of Customs & Border Prot.*, 643 F.3d 1189, 1194 (9th Cir. 2011) (internal quotation marks omitted).

"The terms 'commercial or financial' are given their ordinary meanings." *Id.* Information is "commercial" if it pertains to business or trade, or is designed to be profitable. *Pomares v. Dep't of Veterans Affs.*, 113 F.4th 870, 882 (9th Cir. 2024). Information is "confidential" if it is "customarily kept private, or at least closely held, by the person imparting it." *Id.* (quoting *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 440 (2019)).

Here, the information that DOC redacted under Exemption 4 was seven instances of a laboratory's federal taxpayer identifying number. Leaman Decl., ECF 29 ¶ 34. This information is commercial or financial because it was submitted to comply with federal law and may be used for debt collection purposes and the tracking of tax information. *Id.* ¶ 35. It was obtained from the laboratories and thus is obtained from a person. *See* 5 U.S.C. § 551(2) (defining "person" as "an individual, partnership, corporation, association, or public or private organization other than an agency"). In addition, this information is confidential because the laboratories identified their taxpayer identifying numbers as confidential to DOC. Leaman Decl., ECF 29 ¶ 37. This information is closely held to minimize the risk of corporate identity theft. *Id.*

To qualify as confidential, the receiving party may also have had to provide "some assurance that it will remain secret." *Argus Leader*, 588 U.S. at 434. The DOC provided assurances of confidentiality to the laboratories about the withheld information, since the DOC was prohibited by federal law from disclosing it and the NIST Handbook states that the DOC will protect the confidentiality of the information. *Id.* ¶ 38.

The *Vaughn* Index is sufficiently detailed to justify Defendants' Exemption 4 withholdings. The Index provides a complete list of the documents at issue, groups the withholdings by type of document and information withheld, identifies the corresponding

exemption, and provides justifications for every withholding. *See Vaughn* Index, ECF 29-9, Ex. 9.

Defendants have satisfied their burden of showing that they properly withheld these records under Exemption 4.

### b. Exemption 6

Exemption 6 protects from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To withhold disclosure of information under Exemption 6, the government must satisfy two requirements. *Forest Serv. Emps. for Env't Ethics v. U.S. Forest Serv.*, 524 F.3d 1021, 1024 (9th Cir. 2008). First, the information must be contained in personnel, medical, or similar files. *Id.* "Similar files" has a broad meaning. *Id.*

DOC redacted various kinds of personally identifying information ("PII") of laboratory employees under Exemption 6: "names, email addresses, phone number extensions, phone numbers, fax numbers, job titles, or the individual's area of expertise." Leaman Decl., ECF 29 ¶ 39. As the Ninth Circuit has held, "names and identifying information" meet the "similar file" requirement. *Forest Serv. Emps.*, 524 F.3d at 1024. Defendants have shown that the redacted records are similar files to satisfy the threshold test.

The second requirement is that disclosure of this information would constitute a "clearly unwarranted" invasion of the laboratory employees' personal privacy. *See id.*; 5 U.S.C. § 552(b)(6). To determine this, courts "balance the public interest in disclosure against the interest Congress intended [Exemption 6] to protect." *Cameranesi*, 856 F.3d at 637. Courts first "evaluate the personal privacy interest at stake to ensure that disclosure implicates a personal privacy interest that is nontrivial or more than de minimis." *Id.* (cleaned up). The burden is on the agency at this step. *Id.*

PAGE 11 – OPINION AND ORDER ON SUMMARY JUDGMENT

The personal privacy interest at stake here is nontrivial. Any disclosure would affect "the individual's control of information concerning his or her person." *Id.* at 638. In addition, releasing the contact information of employees of voting system testing laboratories "could potentially subject those individuals to direct contact, stigmatization, and harassment by members of the public." Leaman Decl., ECF 29 ¶ 42. This is especially true after the allegations of voter fraud made after the 2020 election, as "there are documented cases of threats made to employees of voting machine companies and to election poll workers, as well as public vilification generally of those involved in conducting the election." *Id.* As the Ninth Circuit has held, "[d]isclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Cameranesi*, 856 F.3d at 638.

Plaintiff responds that, "historically, both NIST and EAC have posted information and records on their own websites, providing phone numbers, names, email addresses, etc. of persons outside the agency (and within)." Pl.'s Resp., ECF 32 at 6. But Plaintiff has not shown that this is the case for voting system testing laboratory employees in particular, nor disputed that such employees are at risk of harassment by the public. Plaintiff also points to "a number of anomalies, irregularities and inconsistencies in the records produced" and "those records withheld, redacted or produced partially." *Id.* at 5–6. But these inconsistencies do not reduce the privacy interest at stake. The withholdings of PII were "based upon individual feedback with each laboratory that submitted the information, providing them an opportunity to designate which PII should be kept from public disclosure for the safety of their employees and what general categories of PII could be safely released." Leaman Decl., ECF 29 ¶ 44.

Next, because Defendants established a nontrivial privacy interest, this Court must balance that privacy interest against the public interest in disclosure. *See Cameranesi*, 856 F.3d at 639. At this step, Plaintiff must show that "the public interest sought to be advanced is a significant one and that the information [sought] is likely to advance that interest." *Id.* at 637. For the public interest to be significant, courts consider "the extent to which disclosure of the information sought would she[d] light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* at 639–40. Plaintiff's "personal interest" in obtaining the information is irrelevant. *Id.*

Plaintiff argues that the information sought is "of high public interest" and has "long had an expectation of public transparency" such that this information is often published on websites. Pl.'s Resp., ECF 32 at 8. However, this identifying information appears to be of "low and mid-level" laboratory employees, whom the Ninth Circuit has held have "a stronger interest in personal privacy than do senior officials." *Forest Serv. Emps.*, 524 F.3d at 1025. Revealing the PII of these employees will not contribute significantly to the public's understanding of DOC's activities regarding laboratory accreditation. Plaintiff has not shown that the information she requested is likely to advance the asserted public interest.

The *Vaughn* Index is sufficiently detailed to justify Defendants' withholdings under Exemption 6 for the same reasons given above. *See Vaughn* Index, ECF 29-9, Ex. 9.

Defendants properly redacted these documents under Exemption 6.[2]

---

[2] Plaintiff argues that DOC claimed exemptions under Exemptions 5 and 7. Resp., ECF 28 at 7. However, the undisputed record shows that "no records were identified that included information withheld under FOIA Exemptions 5 or 7." Supplemental Declaration of Dana S. Leaman, ECF 36 ¶ 5.

**C.  Segregability**

FOIA provides that any "reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). It is reversible error for a district court to approve the withholding of a document under FOIA without entering a finding on segregability. *Wiener v. F.B.I.*, 943 F.2d 972, 988 (9th Cir. 1991). The agency has the burden of showing that "all reasonably segregable portions of a document have been segregated and disclosed." *Hamdan v. U.S. Dep't of Just.*, 797 F.3d 759, 779 (9th Cir. 2015). Courts may rely on an agency's declaration in making this determination. *Id.*

As noted above, the Leaman Declaration and *Vaughn* Index are sufficiently detailed such that this Court takes them at face value. *See id.* at 780. For Exemption 4, the *Vaughn* Index shows that only laboratories' tax identification numbers were withheld. ECF 29-9 at 3–4. For Exemption 6, the *Vaughn* Index shows that only documents with PII were withheld. *Id.* at 1–6. All information not exempt from disclosure was segregated and released. Leaman Decl., ECF 29 ¶ 47. Defendants have met their burden of showing segregability.

**CONCLUSION**

Plaintiff's Motion to Allow Limited Discovery, ECF 39, is DENIED. Defendants' Motion for Summary Judgment, ECF 28, is GRANTED.

**IT IS SO ORDERED.**

DATED this 30th day of December, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge